**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **MAGGI K. CHRISTNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 2:12CV40 NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## MEMORANDUM AND OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Maggi K. Christner (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), and for Supplemental Security Income (SSI) under Title XVI of the Act.  See 42 U.S.C. §§ 401, 1381. Plaintiff has filed a brief in support of the Complaint.  Doc. 13.  Defendant has filed a brief in support of the Answer.  Doc. 18.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c).  Doc. 20.

## I.
## PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI alleging a disability onset date of March 23, 2009.  Tr. 127-42.  Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge (ALJ).  Tr. 62-64, 67-73.  In September 2010, hearing was held before an ALJ. Tr. 26-61.  In a decision dated October 13, 2010, the ALJ found Plaintiff not

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

disabled.  Tr. 7-25.  Plaintiff filed a request for review with the Appeals Council, which denied Plaintiff's request on April 3, 2012.  Tr. 1-6.  As such, the ALJ's decision is the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have

decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589;

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661

(8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial

evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) Findings of credibility made by the ALJ;

> (2) The education, background, work history, and age of the claimant;

> (3) The medical evidence given by the claimant's treating physicians;

> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

> (5) The corroboration by third parties of the claimant's physical impairment;

> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v.

Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements."

Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically

determinable physical or mental impairment, direct medical evidence of the cause and effect

relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed,

524 F.3d at 876 (citing <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. <u>See</u> <u>id.</u> Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>See</u> <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally

sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position.  See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was twenty-nine years old, with a high school education, alleged she was disabled due to a combination of impairments, including bipolar disorder, depression, anxiety/panic disorder with agoraphobia, post-traumatic stress disorder (PTSD), irritable bowel syndrome (IBS), and migraines.  Regarding the severity of her allegedly disabling conditions, Plaintiff testified that she had migraines, which lasted two to four hours; she suffered from insomnia; on bad days, she went to the bathroom five to ten times an hour; she had crying spells two to five times a day that lasted for one to two hours each time; she had suicidal thoughts three to five times a week; she had panic attacks five times a week and the attacks lasted from forty-five minutes to two hours; and she had diarrhea every day from four to fifteen times a day between 8:00 a.m. and 5:00 p.m.  Tr. 33-48.

The ALJ found Plaintiff met the insured status requirements through December 31, 2012; she had not engaged in substantial gainful employment since her alleged onset date, March 23, 2009; she had the severe impairments of depression, anxiety, and irritable bowel syndrome; she did not have an impairment or combination of impairments that met a listed impairment; Plaintiff

could engage in the full range of work at all exertional levels, with the non-exertional limitations of her being limited to simple, routine, repetitive tasks, low stress jobs with only occasional changes in the work setting, and occasional interaction with the public, coworkers, and supervisors; Plaintiff could not perform her past relevant work; there was work in the national economy which Plaintiff could perform, including table worker, bench assembler, and mail sorter; and, therefore, Plaintiff was not disabled.

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ erred in finding that Plaintiff did not meet Listings under Section 12.04 (affective disorder) or 12.06 (anxiety related disorders); the ALJ did not give controlling weight to the opinions of Joseph Spaulding, D.O., and Frank Froman, Ed.D.; and the ALJ posed an improper hypothetical to a VE.  For the following reasons the court finds that the ALJ's decision is supported by substantial evidence.

## A.    Plaintiff's Credibility:

The court will first address the ALJ's credibility considerations, as the ALJ's decision in this regard is relevant to issues raised by Plaintiff, including the severity of her mental impairments.  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v.

Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence and consistent with the Regulations and case law.

First, the ALJ considered that Plaintiff failed to keep appointments for several counseling sessions. In this regard, Katie Korte, PLPC, reported Plaintiff had nine therapy sessions from January 22, 2010, to February 15, 2010; she cancelled two scheduled appointments and did not reschedule, see Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments); Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain); and Plaintiff made "some slight progress on goals before stopping therapy, see Brown v. Astrue, 611 F.3d

941, 955 (8th Cir. 2010) (conditions which can be controlled by treatment are not disabling).  Tr. 512.

Second, the ALJ considered that Plaintiff had gaps in her treatment history.  Tr. 16. Indeed, Plaintiff acknowledges that she did "not have an ideal treatment history."  Doc. 13 at 13. Also, after Plaintiff was seen on June 1, 2009, she did not return for psychiatric care until December 21, 2009.  See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (lack of regular treatment for alleged disabling condition detracts from claimant's credibility).

Third, the ALJ considered Plaintiff's daily activities.  Plaintiff testified or reported that she prepared simple daily meals, performed household cleaning, washed laundry, shopped for groceries and household items, cared for her young daughter which included bathing and feeding her and taking her to school and the park, drove a car, ran errands, babysat, did yard work, fished "a lot," walked with her daughter, camped, and went to Wal-Mart with friends.  Tr. 36-38, 188-92, 202-206.  Plaintiff's mother reported that Plaintiff had no difficulty in performing household chores, including vacuuming, sweeping, scrubbing floors, mowing the lawn, doing laundry, and cooking, and that she had very good hygiene.  Tr. 256.  Also, after reviewing the record, Kenneth Burstin, Ph.D., reported Plaintiff had moderate restrictions in her ability to perform activities of daily living.  Tr. 348.  Dr. Froman, who conducted a mental status examination of Plaintiff at the request of the State agency, reported that Plaintiff said that she did some routine chores around the house when she was in a good mood.  Tr. 337.

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See Eichelberger, 390 F.3d at 590 (holding that the ALJ properly

considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987).  Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)).  "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)).  See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Fourth, upon discrediting Plaintiff the ALJ considered that, although Plaintiff asserted she needed to use the restroom 15 times over the course of a day due to her IBS, she sat for over one hour during the hearing without showing any signs of pain or needing to use the restroom. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration.  See Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones

v. Callahan,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations.

Fifth, as considered by the ALJ, when Plaintiff presented at the Hannibal Clinic on April 28, 2009, Larry Nichols, D.O., discussed with Plaintiff the importance of appropriate diet, exercise, sleep, and fluid intake. He further advised her to increase fiber in her diet. Tr. 323. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (conservative treatment is consistent with discrediting claimant's allegation of disabling pain); Constock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (upon discrediting the claimant's allegations of back pain, ALJ properly considered that Plaintiff took aspirin, used a whirlpool tub, and had his wife rub ointment on his back to relieve pain); Benskin, 830 F.2d at 884 (holding that disabling pain not indicated when claimant merely took hot showers and used Advil and aspirin to relieve pain).

Sixth, the ALJ considered the extent to which Plaintiff was non-compliant with recommended treatment. As considered by the ALJ, June 1, 2009 psychiatric progress notes reflect that Plaintiff had "some anxiety" and she had stopped taking her medication. Tr. 16, 443. Also, on December 21, 2009, Plaintiff complained of increased feelings of irritation after she had not taken her mediation for three weeks (Tr. 448), and a March 31, 2010 Mental Health Evaluation, completed by Dr. Spaulding, stated that Plaintiff had not taken her lithium that morning. Tr. 503. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain).

Seventh, Plaintiff testified that her visits to Dr. Spaulding for her mental conditions and lithium and lorazepam helped her and made her feel better. Tr. 33. Also, in May 2009, Dr. Nichols opined that the majority of Plaintiff's bowel symptoms were suggestive of lactose intolerance, and he planned to have her take Lactate. Tr. 325. July 23, 2009 records from Mark Twain Behavioral Health reflect that Plaintiff was "OK," and her appetite and sleep were "good" while she was on her medication, and that she did not have side effects from medication. Tr. 442. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (if impairments can be controlled by treatment, they cannot be considered disabling).

Eighth, July 23, 2009 records from Mark Twain Behavioral Health reflect that Plaintiff did not have side effects from her medications. Tr. 442. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994).

Ninth, although Plaintiff testified that she had suicidal thoughts and was aggressive at times (Tr. 45, 49), June and July 2009 Mark Twain Behavioral Health records state there was an absence of aggression; there was no suicide risk, psychosis, or risk to others; and Plaintiff's appearance, behavior, orientation, speech, affect, thought process, and impulse control were normal. Additionally Plaintiff had no delusions or hallucinations. Tr. 442-43. See Eichelberger, 290 F.3d at 589 ("[A]n ALJ may disbelieve a claimant's subjective reports of pain because of inconsistencies or other circumstances.").

**B.      Plaintiff's Mental Impairments.**

As stated above, Plaintiff argues the ALJ erred in finding she did not meet the Listings for affective disorder (Section 12.04) or for anxiety related disorders (Section 12.06). 20 C.F.R.

Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam). The relevant sections of Listings 12.04 and 12.06 require medically documented depression, manic syndrome, bipolar syndrome, or anxiety disorder that "[r]esult[s] in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration … ."

The mere existence of a mental condition, however, is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. § 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

Consistent with the Regulations, the ALJ in this matter first considered Plaintiff's activities of daily living as addressed above in regard to Plaintiff's credibility. In particular, he considered Plaintiff's testimony and that of her mother, as well as the findings of Dr. Burstin and Dr. Froman. The court finds, based on the record as a whole, that the ALJ's determination that Plaintiff had moderate restrictions in the area of daily living is supported by substantial evidence.

With regard to social functioning, the ALJ found Plaintiff had moderate difficulties. Tr. 14. As considered by the ALJ, Plaintiff testified that she became violent one or two times a week and would hit her boyfriend and break things. As discussed above, however, she also testified that she cared for her daughter, went on dates with her boyfriend, and went to Wal-Mart and the park with friends. Tr. 36-38. Plaintiff's mother reported that Plaintiff was "very good with the public." Tr. 256. Dr. Froman reported that Plaintiff's ability to relate was fair, her speech was easy to understand, and her eye contact was good, and that Plaintiff reported that she socialized minimally when she was in a "foul mood," and often found herself so angry that she would have fights; and at times she did not want to be with others and at other times she was both gregarious and social. Dr. Froman opined that Plaintiff could understand simple oral and written instructions. Tr. 337-39. The court finds that the ALJ's determination that Plaintiff had moderate limitations in the area of social functioning is supported by substantial evidence.

With regard to concentration, persistence, or pace, the ALJ found Plaintiff had a moderate restriction. Tr. 14. Plaintiff testified or reported that she spent evenings with her daughter, went on dates with her boyfriend, maintained relationships with several friends, shopped for groceries and household items, and went to the movies. Tr. 36-38, 191-92, 205-206. Dr. Burstin reported that Plaintiff had moderate limitations in concentration. Tr. 348. Dr. Froman reported that Plaintiff initially presented as anxious, but "nevertheless was able to" settle

down, until the end of the examination when she broke down in tears. Dr. Froman also reported that Plaintiff said that she used marijuana because it calmed her down. Tr. 337. The court finds that the ALJ's determination that Plaintiff had a moderate restriction in regard to concentration, persistence, or pace is based on substantial evidence.

With regard to episodes of decompensation, the ALJ considered that Plaintiff experienced no episodes of decompensation which were for an extended duration. While Plaintiff testified that she suffered auditory hallucinations that told her to hurt herself and that she did attempt to overdose with pills, the ALJ considered that Plaintiff's hallucinations and suicidal actions did not result in an extended inpatient stay; they did not reach the durational level of an extended episode of decompensation; and they did not satisfy the requirement of repeated episodes of decompensation. Tr. 14. The court finds that the ALJ's determination in regard to Plaintiff's having episodes of decompensation is based on substantial evidence.

When determining the severity of Plaintiff's mental impairments, the ALJ considered the evidence of record, including that, on March 23, 2009, Dr. Spaulding completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), in which he opined that Plaintiff had extreme limitations in regard to social functioning, and moderate limitations in regard to understanding, remembering, and carrying out simple instructions, and moderate limitations in regard to making simple work-related decisions. As explained in the Medical Source Statement, a person with moderate limitations is able to function satisfactorily. Tr. 522-25. Although Dr. Spaulding reported that Plaintiff had marked limitations in regard to complex instructions, the ALJ limited Plaintiff's RFC to simple instructions, and thus the ALJ's RFC determination is not precluded by the limitations imposed by Dr. Spaulding. Doc. 13 at 7-9.

To the extent Dr. Spaulding opined Plaintiff's limitations in social functioning were extreme, as discussed above, substantial evidence, including Plaintiff's self-reporting and the reporting of her mother, provides substantial evidence that support the ALJ's determination that Plaintiff had only moderate limitations in this area. See Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole."). Moreover, to the extent Dr. Spaulding indicated Plaintiff's inability to work by checking boxes on a form, the ALJ properly discounted Dr. Spaulding's opinion. See Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004) (treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence); Hogan, 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996).

On March 31, 2010, Dr. Spaulding reported that Plaintiff was alert and oriented, her flow of thought was logical and goal direct, her cognition was average or above, her insight, and judgment were fair. Plaintiff told Dr. Spaulding that she would never harm herself. Tr. 506. On April 29, 2010, Plaintiff reported to Dr. Spaulding that she had been smoking marijuana "a lot"; she was going to have her son that night through the next Wednesday; and she had no complaints at that time. Tr. 507. Thus, the court finds, to the extent Dr. Spaulding opined that Plaintiff was disabled, that Dr. Spaulding's opinion is inconsistent with his own treatment notes. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

evidence"). Further, the court finds that the ALJ gave proper weight to Dr. Spaulding's opinion that the ALJ's decision, in this regard, is based on substantial evidence on the record as a whole.

As for Plaintiff's argument that the ALJ gave too much weight to Dr. Froman's opinion that Plaintiff could perform one and two step assemblies at a competitive rate, Dr. Froman did conduct a mental status examination of Plaintiff. His examination showed Plaintiff was able to name five large cities, was oriented, able to perform simple calculations, and had a functional IQ in the high 80s to low 90s. Also, Plaintiff indicated to Dr. Froman that she knew how to read and write. Tr. 338. The court finds, therefore, that the weight the ALJ gave to Dr. Froman's opinion is based on substantial evidence.

To the extent Plaintiff argues that the ALJ gave too much weight to Dr. Burstin's opinion as reflected on a July 9, 2009 Psychiatric Review Technique form that Plaintiff did not meet the requirements of a Listing for mental impairments, and, on a Mental Residual Functional Capacity Assessment form that Plaintiff was capable of acquitting and retaining at least simple instructions, sustaining concentration and persistence with at least simple repetitive tasks, adapting to changes in non-complex work environments which did not require frequent public contact or very close interaction with others in the workplace, Dr. Burstin did review Plaintiff's medical records. In any case, the ALJ considered the record as a whole, and only after doing so did he determine that, although Plaintiff's depression and anxiety were severe, Plaintiff did not meet or equal the requirements of a Listed impairment. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.").

While the ALJ found that Plaintiff's mental impairments did not meet or equal a Listed impairment and while he found that Plaintiff had the RFC to perform the full range of work at all

exertional levels, the ALJ did limit Plaintiff to low stress jobs that require only simple, routine, and repetitive tasks, occasional changes in the work setting, and occasional interaction with the public, co-workers, and supervisors. See Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001) ("When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."). The ALJ reached this RFC determination only after considering all the relevant credible evidence of record. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"). The court finds that the ALJ's RFC determination, including the extent to which the ALJ included non-exertional limitations, is based on substantial evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."). In conclusion, the court finds that the ALJ gave proper weight to doctors of record when determining the severity of Plaintiff's mental impairments; the ALJ's conclusion that Plaintiff's mental impairments did not meet a listed impairment is based on substantial evidence; and the ALJ's RFC determination, to the extent it addresses Plaintiff's mental impairments, is based on substantial evidence.

## C.     Hypothetical to the VE:

The ALJ found Plaintiff had the RFC for the full range of work at all levels but was limited to low stress jobs that require only simple, routine, and repetitive tasks, occasional changes in the work setting, and occasional interaction with the public, co-workers, and

supervisors. The court has found above that the ALJ's RFC determination, to the extent it addresses Plaintiff's mental impairments, is based on substantial evidence. The court further finds the ALJ's RFC determination, in its entirety, is based on substantial evidence.

The ALJ submitted a hypothetical to a VE which included all Plaintiff's credible limitations, as set forth in Plaintiff's RFC; despite Plaintiff's contention to the contrary, the ALJ was not required to account for limitations or impairments beyond those which the ALJ found credible. See Martise v. Astrue, 641 F.3d 909, 927(8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."); Guilliams, 393 F.3d at 804 (proper hypotheticals set forth impairments supported by substantial evidence and accepted as true by ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988); see also Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006).

The VE testified that there was work in the national economy which a person of Plaintiff's age and with her education and RFC could perform. The court finds, therefore, that the ALJ posed a proper hypothetical to the VE and that the VE's testimony provides substantial evidence that Plaintiff was not disabled. See Robson v. Astrue, 526 F.3d 389, 392 (8th Cir.

2008) (VE's testimony is substantial evidence when it is based on accurately phrased hypothetical capturing concrete consequences of claimant's limitations); <u>Wingert v. Bowen</u>, 894 F.2d 296, 298 (8th Cir. 1990).

**IV.**
**CONCLUSION**

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 13.

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Opinion.

Dated this 14th Day of March 2014.


 /s/Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE